24CA1453 Peo v Thompson 08-13-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1453
Fremont County District Court No. 23CR385
Honorable Kaitlin Turner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Scott Christian Thompson,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

Philip J. Weiser, Attorney General, Katherine Wynn, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Tara Jorfald, Alternate Defense Counsel, Bryan Collins, Alternate Defense Counsel, Lakewood, Colorado, for Defendant-Appellant

¶ 1     Scott Christian Thompson appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted second degree assault and menacing against his sister.  Thompson contends that the district court violated his constitutional rights to present a complete defense and to require the prosecution to prove every element of the crimes by "restricting his ability to draw reasonable inferences from the evidence during closing argument."  We disagree and therefore affirm the judgment of conviction.

## I.     Background

¶ 2     Thompson lived next door to his sister.  When his sister's boyfriend[1] asked Thompson to move his truck so the sister — who was expected to arrive soon — could park on the shared driveway, a verbal confrontation quickly escalated into a physical altercation after Thompson punched the boyfriend in the face.  Thompson repeatedly threatened to kill the boyfriend, but the boyfriend soon gained the upper hand, slamming Thompson to the ground and, in his own words, "beat[ing] the shit out of him."

---

[1] At trial, the boyfriend referred to Thompson's sister as his wife. The timing of their marriage is unclear; the parties continue to refer to them as "boyfriend" and "girlfriend" in their briefing.

1

¶ 3    While the boyfriend was still on top of Thompson, Thompson's girlfriend and sister arrived.  Thompson's girlfriend — who has multiple sclerosis and uses walking aids — began kicking his sister's boyfriend from behind and striking him with her walking stick.  The boyfriend told her to "get the fuck out of here before you get some too," and the sister warned her, "[I]f you don't scat, I'm going to get on you."  Eventually, the boyfriend got off Thompson and helped the sister call 911 as they walked down the driveway.  Meanwhile, Thompson's girlfriend helped him up, and Thompson entered his home to retrieve a gun.  The sister, still on the phone with 911 and standing a few feet from her boyfriend, saw Thompson point a gun in her direction.  Thompson fired toward her once, hitting a nearby tree.  No additional shots were fired.

¶ 4    Thompson was initially charged with, among other offenses, (1) attempted second degree assault; and (2) menacing, as to his sister "and/or" her boyfriend.  During the jury instruction conference, however, the prosecution amended the charges to identify Thompson's sister as the only victim.  In closing, defense counsel argued that the jury should consider that Thompson was

not charged with crimes related to the initial altercation with his sister's boyfriend:

> Here's another thing I want you to consider, the only charges remaining against [Thompson] are attempt to commit second-degree assault with a firearm and menacing with a firearm, right. So what has not been charged? What has [Thompson] not been accused of? The initial assault on [the boyfriend].
>
> Even [the prosecutor] doesn't think that he's guilty of that initial assault . . . . [The prosecutor is] willing to charge him with crimes that she believed that he committed . . . but she doesn't charge him with that initial assault . . . .

¶ 5 The prosecutor objected and the court held a bench conference. The prosecutor argued these statements were "unduly prejudicial," relied on "facts not in evidence," and would confuse the jury. Defense counsel responded that "the charges that haven't been filed is a fact that's in place" and that the jury could consider a "lack of charges." The court ruled that defense counsel's argument "can be about the charges that are pending" — the assault and menacing charges as to Thompson's sister.

¶ 6 Immediately upon resuming closing argument, defense counsel told the jury, "Note the only charges pending are related [to]

3

the later alleged use of the firearm . . . . Not for the original assault." This prompted a second objection and bench conference during which defense counsel explained that he thought he could argue the "converse of something I'm allowed to say." He reasoned that the court "said I could talk about what charges are being filed and I'm allowed to talk about reasonable inferences from things that I'm allowed to say." The court clarified that defense counsel's argument could be about "whether the People ha[d] proven or met their burden as to [the] two charges" before the jury, but not the dropped counts as to the sister's boyfriend.

¶ 7 The court instructed the jury on Thompson's theory of defense, explaining that Thompson fired the gun once because he reasonably believed that either his sister or her boyfriend would assault him or his girlfriend. The court also instructed the jury that charges are not evidence and that the prosecution bore the burden of proving beyond a reasonable doubt that Thompson's actions were not justified by self-defense or "defense of others." The jury found that the prosecution met its burden and convicted Thompson on both counts.

¶ 8 Thompson now appeals.

II.    Analysis

¶ 9    Thompson argues that the district court, by limiting the scope of closing argument, "infringed upon [his] ability to present his self-defense argument and lessened the prosecution's burden" in violation of his constitutional due process rights.  We first address whether these contentions were preserved, then provide the standard of review and relevant law before turning to the merits.

A.    Preservation

¶ 10    The parties disagree on whether Thompson preserved the issues for appeal.  Although Thompson preserved his challenge to the district court's ruling on the scope of defense counsel's closing argument, we agree with the People that Thompson failed to preserve the two constitutional issues he raises on appeal.

¶ 11    To preserve an issue for appellate review, a party must make a timely objection on the record that is "specific enough to draw the [district] court's attention to the asserted error."  *Forgette v. People*, 2023 CO 4, ¶ 21 (citation omitted).  A party need not use "talismanic language" but should use language that is clear enough to provide the district court an "opportunity to make findings of fact

5

and conclusions of law on any issue." *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004) (citation omitted).

¶ 12     Despite two bench conferences, Thompson did not specifically argue that the court's limitation on defense counsel's closing argument violated his constitutional rights to present a complete defense or require the prosecution to prove every element beyond a reasonable doubt. Nor did he broadly object to the court's limitation as a violation of due process. At the first bench conference, defense counsel suggested only that the jury could consider a "lack of charges." At the second bench conference, he told the court, "I'm allowed to talk about *reasonable inferences* from things that I'm allowed to say." (Emphasis added.) On appeal, Thompson defines "reasonable inferences" as "the absence of charges for the initial fistfight support[ing] the lawfulness of his [subsequent] conduct" and argues that referencing "reasonable inferences" in the district court was sufficient to preserve both constitutional issues given the context of his closing argument.

¶ 13     We agree that Thompson adequately preserved his challenge to the district court's limitation on defense counsel's closing argument because the court could and did rule, twice, that arguments based

6

on the dismissed charges were improper. But raising this objection without identifying any constitutional error or connecting it to his self-defense theory was insufficient to alert the district court to the two due process violations he now asserts. *See People v. Greer*, 262 P.3d 920, 930 (Colo. App. 2011) (explaining that, if a defendant raises only nonconstitutional arguments at trial but later asserts a due process claim on appeal, the new claim is considered unpreserved). And Thompson cannot create preservation by presenting on appeal a series of inferential steps connecting his vague statements about "reasonable inferences" to specific constitutional grounds. *See People v. Short*, 2018 COA 47, ¶ 53 (holding that the defendant did not preserve the constitutional issues of a complete defense and a fair trial when he objected based only on the rule of completeness); *People v. Gash*, 165 P.3d 779, 781 (Colo. App. 2006) (holding that when a defendant objects on hearsay grounds but not on confrontation grounds at trial, the confrontation claim is not preserved for appellate review). Accordingly, Thompson's challenge to the scope of closing is preserved, but his constitutional claims are not because the district

court had no opportunity to make findings of fact and conclusions of law on those issues. *See Melendez,* 102 P.3d at 322.

### B.     Standard of Review and Relevant Law

¶ 14     A district court has broad discretion in ruling on objections made during closing argument, and absent a gross abuse of that discretion, we will not reverse the district court's rulings. *People v. Mandez,* 997 P.2d 1254, 1269 (Colo. App. 1999); *see also People v. Motley,* 498 P.2d 339, 340 (Colo. 1972) ("It is fundamental in Colorado that the scope of final argument rests in the sound discretion of the trial court."). A district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law. *People v. Payne,* 2019 COA 167, ¶ 27.

¶ 15     An unpreserved claim of error in a criminal case is reviewed for plain error. *Hagos v. People,* 2012 CO 63, ¶ 14; *see also Payne,* ¶ 28 (reviewing the defendant's unpreserved challenge to the court's rulings during closing argument for plain error). "Plain error addresses an error that is both 'obvious and substantial.'" *Hagos,* ¶ 18 (citation omitted). An error is obvious if it "contravene[s] a clear statutory command, a well-settled legal principle, or

8

established Colorado case law," *People v. Crabtree*, 2024 CO 40M, ¶ 42, such that a district court should be able to avoid the error without the benefit of an objection, *People v. Conyac*, 2014 COA 8M, ¶ 54. "An error is 'substantial' enough to warrant reversal if it 'so undermine[d] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.'" *People v. Perez*, 2024 COA 94, ¶ 26 (quoting *Cardman v. People*, 2019 CO 73, ¶ 19); *see People v. Deutsch*, 2020 COA 114, ¶ 22.

¶ 16    The Constitution guarantees every criminal defendant "a meaningful opportunity to present a complete defense." *Rios-Vargas v. People*, 2023 CO 35, ¶ 20 (quoting *Homles v. South Carolina*, 547 U.S. 319, 324 (2006)); *see* U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 24. Colorado law likewise requires the prosecution to disprove a properly presented affirmative defense — such as self-defense — beyond a reasonable doubt. *Kaufman v. People*, 202 P.3d 542, 550 (Colo. 2009) (treating the affirmative defense as if it were another element of the charged offense).

¶ 17    During closing argument, both advocates "may properly include the facts in evidence and any reasonable inferences drawn

therefrom." *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005). Closing argument is a critical stage when advocates have the opportunity "to point to different pieces of evidence and explain their significance within the case." *Id.* However, despite the "wide latitude" granted in closing argument, advocates may not use their arguments to "mislead or unduly influence the jury." *Id.* at 1048-49. Thus, "[c]losing argument must be confined to the evidence admitted at trial, the inferences that can reasonably and fairly be drawn from it, and the instructions of law submitted to the jury." *People v. Rojas*, 181 P.3d 1216, 1223 (Colo. App. 2008).

¶ 18 Criminal charges are not evidence or proof of guilt, and jurors are typically instructed on this principle. *See, e.g.*, COLJI-Crim. B:01 (2025) ("The charge itself is not evidence of anything. It is not proof the defendant committed any crime. No juror should assume the defendant committed a crime just because he [she] was charged with doing so."); COLJI-Crim. E:02 (2025) ("The charge against the defendant is not evidence. The charge against the defendant is just an accusation. The fact that the defendant has been accused is not evidence that the defendant committed any crime.").

¶ 19    For example, in *People v. Mendenhall*, 2015 COA 107M, ¶ 62, a division of this court emphasized the danger in discussing the charging process with the jury, explaining that whether the prosecution "believed that there was reason to bring charges against a defendant is irrelevant because that belief has no rational tendency, using permissible inferences, to make it more probable that the defendant committed the charged offense."

### C.    Discussion

¶ 20    Thompson argues that the district court committed reversible error by restricting "his ability to present a complete defense" and by "improperly lessen[ing] the prosecution's burden."  Specifically, he argues that, by "[p]reventing Thompson from arguing that the prosecution's own charging decisions reflected the noncriminal nature of his conduct on the initial fight," the court, in effect, "limited his ability to show that his later firearm use was part of a single, continuous episode and a continuation of lawful self-defense" and "impermissibly shifted the prosecution's burden of disproving self-defense."  We disagree.

¶ 21    Applying *Mendenhall*, the district court did not abuse its discretion by barring defense counsel from referencing the lack or

11

dismissal of charges relating to the initial fight. It is well established that the prosecution cannot use charges as evidence of guilt. *See, e.g.,* COLJI-Crim. B:01; COLJI-Crim. E:02. Thompson even agreed to a jury instruction reflecting this principle. Because charges are not evidence, it would be improper for the prosecution to argue in closing that the existence of charges permits the jury to infer guilt. *See* COLJI-Crim. B:01; COLJI-Crim. E:02; *Mendenhall,* ¶ 62. By the same reasoning, defense counsel should not be permitted to argue that the absence or dismissal of charges supports an inference of lack of guilt. Nor can Thompson point to any Colorado authority allowing defense counsel to use the *absence* of charges as circumstantial evidence of lawful conduct.[2] Rather,

---

[2] Thompson relies on *United States v. White*, 692 F.3d 235 (2d Cir. 2012), to argue that the court erred by preventing him from referencing the dismissed charges for the initial fistfight during closing argument. However, in *White,* the Second Circuit Court of Appeals held that exclusion of evidence concerning the government's charging decision is not an "all or nothing" matter; such decisions may be proper subjects for cross-examination and argument if otherwise admissible. *Id.* at 246. The district court must first determine the relevance and probative value of such evidence before admitting it. *Id.* In this case, defense counsel did not introduce the lack of charges as evidence but merely sought to mention it during closing argument. Thus, *White* is inapplicable here.

since a charge is merely an accusation and not evidence, COLJI Crim. E:02, the lack of a charge indicates only a lack of prosecution, not proof of innocence.  Notably, when the jury asked during deliberations, "why . . . attempted murder [is] not one of the options," defense counsel informed the court, "I think if you refer back to [the] instruction [stating] the charges against [Thompson] are not evidence that arguably answers the question."  Likewise, the district court did not abuse its discretion by prohibiting Thompson from referencing the lack or dismissal of charges for the initial fight.

¶ 22    Even if the district court erred by precluding defense counsel from discussing the lack or dismissal of charges during closing, any such error was neither obvious nor substantial regarding Thompson's ability to present a complete defense or the prosecution's burden of proof.  To the extent Thompson now asserts that the court improperly limited his ability to show that his subsequent firearm use was part of a single, continuous episode and a continuation of lawful self-defense,  any alleged error was not obvious.  The court did not contravene any clear statutory command, well-settled legal principle, or established Colorado case law by limiting defense counsel's closing argument.  *See Crabtree,*

¶ 42. Thompson does not cite, nor are we aware of, any legal authority supporting his position that precluding counsel's reference to the lack or dismissal of charges during closing argument denies a defendant a complete defense or improperly lessens the prosecution's burden. Accordingly, any alleged error affecting Thompson's constitutional rights was not obvious.

¶ 23 Additionally, any error was not substantial because the district court's ruling did not undermine Thompson's defense or reduce the prosecution's burden in a way that casts "serious doubt" on the reliability of his conviction. *Perez,* ¶ 26 (quoting *Cardman,* ¶ 19). As to Thompson's ability to present a complete defense, defense counsel argued during closing — without referencing the dismissed charges — that Thompson was "innocent" during the initial fistfight:

- A significant portion of the testimony focused on the initial fistfight and emphasized the boyfriend's physical dominance. The boyfriend testified that he quickly gained control of the altercation by slamming Thompson to the ground.

- The boyfriend told Thompson's girlfriend, "[G]et the fuck out of here before you get some too," while the sister told her to "scat."

- The boyfriend also admitted that he refused medical attention from emergency responders and suffered only minor bleeding on his arms and face — injuries that defense counsel attributed to his act of slamming Thompson to the ground.

- Photographs introduced at trial depicted Thompson's battered face following the altercation with the boyfriend.

Thompson *did* rely on this evidence to argue that he acted in self-defense when he later fired the gun. The district court's restriction on defense counsel's closing argument therefore did not inhibit his ability to present a complete defense.

¶ 24 Still, Thompson argues that the district court's "ruling confined the jury to considering only the firearm incident in isolation," rather than "requiring the prosecution to disprove self-defense in light of the entire altercation." We disagree. The jury not only was presented with evidence of the entire altercation

but also was instructed concerning Thompson's theory of defense, which explicitly tied his gunshot to the earlier fistfight.

¶ 25　The jury was further instructed that the prosecution must prove "the elements of the crime of [a]ttempt to commit [a]ssault in the [s]econd [d]egree," including "that [Thompson's] conduct was not legally authorized by the affirmative defense[s]" of self-defense or defense of others. These instructions clarified that Thompson was legally authorized to use force upon another person, without retreating first, if he used the amount of force he reasonably believed was necessary to defend himself or his girlfriend from the imminent use of unlawful physical force by Thompson's sister "or by persons acting in concert with [the sister]" (i.e., her boyfriend). Accordingly, even if the court erred by limiting closing argument, any error did not cast doubt upon Thompson's conviction by undermining his ability to present a complete defense or lowering the prosecution's burden of proof.

¶ 26　For all these reasons, the district court's ruling did not amount to an abuse of discretion or plain error.

### III.　Disposition

¶ 27　The judgment is affirmed.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.